ARTHUR HAVERLY, Plaintiff-Appellant, *v.* WILLIAM BOYS *et al.*, Defendants-Appellees.

First District (2nd Division)    No. 78-1329

Opinion filed September 25, 1979.

Oliver H. Harris, of Evanston, for appellant.

William J. Scott, Attorney General, of Chicago (Russell C. Grimes, Jr., Assistant Attorney General, of counsel), for appellees.

Mr. JUSTICE HARTMAN delivered the opinion of the court:

This appeal is taken by plaintiff Arthur Haverly from dismissal of a petition for a writ of mandamus to compel his compensation as a State employee for the period of time he was suspended from his position pending a hearing on his discharge, to the time of his discharge. For the reasons hereinafter stated, we affirm.

Haverly was a nonprobationary employee of the Illinois Bureau of Employment Security. He had been previously suspended several times in 1977: from March 24 to March 30; and from June 6 to June 19. He received notice of certification of charges seeking his suspension for a period of more than 30 days on October 21, and was again suspended from October 24 to November 4. When he returned to work on November 7, he was sent home to await notification of further charges against him. His compensation was terminated November 9. On or before November 17 he received notice of charges seeking his discharge.

The hearings before the Civil Service Commission on the charges against Haverly began on December 29, 1977. During the course of the hearings, he questioned the legality of his removal prior to the completion of the hearings, but was advised by the hearing officer that this issue was beyond the scope of the ongoing hearings and should be the subject matter of court litigation. The hearings concluded with a recommendation of the hearing officer that Haverly be discharged. On July 20, 1978, approximately 250 days after Haverly was initially sent home, the Civil Service Commission acted on the hearing officer's recommendation, and Haverly was discharged, effective that date.

In the meantime, Haverly filed a petition for a writ of mandamus in the circuit court of Cook County, on March 8, 1978, naming as defendants Illinois State officials William Boys, Director of Personnel, William Bowling, Director of Labor, Donald R. Smith, Treasurer, Michael J. Bakalis, Comptroller, and C. Thomas Ross, Employment Security Administrator. Haverly alleged that he had repeatedly demanded of defendants that they pay him his salary, but they had refused to do so, and that the termination of his compensation was illegal because defendants' authority to interrupt his compensation was limited to a period of 30 days per year. He asked that the court compel resumption of his compensation. Defendants filed a motion to dismiss based on sections 45 and 48 of the Civil Practice Act (Ill. Rev. Stat. 1977, ch. 110, pars. 45 and 48), which was granted on May 11, 1978. It is from that order that this appeal ensues.

Defendants maintain and the circuit court held that State employees may be displaced from their positions without pay pending hearings on their discharges. Haverly contends that such a practice is expressly barred by section 11 of the Personnel Code (Ill. Rev. Stat. 1977, ch. 127, par. 63b111), which states in part:

> "No officer or employee under jurisdiction B, relating to merit and fitness, who has been appointed under the rules and after examination, shall be removed or discharged, demoted or suspended for a period of more than 30 days, except for cause, upon written charges approved by the Director of Personnel, and after an opportunity to be heard in his own defense if he makes written request to the Commission within 15 days after the serving of the written charges upon him. Upon the filing of such a request for a hearing, the Commission shall grant a hearing within 30 days. * * *"

Plaintiff argues this provision clearly means that certified State employees may not be removed from their jobs for more than 30 days except after a hearing, particularly under the so-called "plain meaning rule" (see *City of Nameoki v. Granite City* (1950), 408 Ill. 33, 95 N.E.2d 920).

Defendants, however, contend that this language has been authoritatively assigned a contrary construction and that the theory proposed by Haverly would conflict with section 11b of the Personnel Code (Ill. Rev. Stat. 1977, ch. 127, par. 63b111b), dealing with compensation of employees who are reinstated after suspension or discharge.

■■ The language in question has been the subject of appellate court analysis in three recent cases. In *Brewton v. Civil Service Com.* (1969), 115 Ill. App. 2d 460, 253 N.E.2d 504, essentially identical language, which appeared in section 10—1—18.1 of the Illinois Municipal Code (Ill. Rev. Stat. 1967, ch. 24, par. 10—1—18.1), was construed as preventing the termination of the compensation of a library employee where no hearing was held before he was sent home to await a discharge hearing and he had already been suspended for the 30-day maximum period within the previous 12-month time frame. In *Brewton*, no suspension beyond the initial 30-day period was ordered, however. Five years later, in *People ex rel. Cotter v. Conlisk* (1974), 17 Ill. App. 3d 346, 308 N.E.2d 1, the court expressed "disagreement" with *Brewton* and held that a police officer suspended pending a discharge hearing was not entitled to interim compensation. Plaintiff seeks to distinguish *Cotter* or, in the alternative, to persuade this court to reject that decision. The only distinctions to be drawn between *Cotter* and the present case are that the language governing *Cotter* was contained in the Municipal Code rather than the Personnel Code, and Cotter was a policeman, whereas plaintiff was an office worker. Because the language in the two statutes is virtually identical in its substantive aspects, we do not regard the fact that it appears in different statutes as significant. To the contrary, because of the similarity of language appearing in the State Personnel Code and the Illinois Municipal Code, these provisions must be considered from the same public policy perspective. (See *Kropel v. Conlisk* (1975), 60 Ill. 2d 17, 25, 322 N.E.2d 793; *Bart v. Department of Law Enforcement* (1977), 52 Ill. App. 3d 487, 492, 367 N.E.2d 773.) As for the type of work done by the suspended employee, neither statute provides any basis for holding that employees would be afforded different treatment according to the nature of their work.

More recently, in *Hoban v. Rochford* (1979), 73 Ill. App. 3d 671, 392 N.E.2d 88, *Cotter* was cited with approval and followed in a case involving the suspension and discharge of a Chicago police captain who maintained his residence beyond the city limits. The appellate court there found that Hoban could properly be suspended indefinitely pending a hearing and disposition of charges against him without violating the terms of section 10—1—18.1 of the Illinois Municipal Code (Ill. Rev. Stat. 1975, ch. 24, par. 10—1—18.1), or due process, or Hoban's right to equal protection of the law, stating (73 Ill. App. 3d 671, 678-79):

"Our construction of the statute is supported by our decision in *People ex rel. Cotter v. Conlisk* (1974), 17 Ill. App. 3d 346, 308 N.E.2d 1. There a Chicago policeman was indefinitely suspended pending a hearing and disposal of charges against him. Ultimately the officer was discharged and he sought payment of his salary for the period beginning 30 days after his suspension and ending when he was notified of his discharge following a hearing. The officer contended that under section 10—1—18.1 he could not be suspended without pay for more than 30 days while awaiting disposition of the charges against him. We held:

'Such an interpretation could not have been intended by the Legislature. To do so would require the police department to either continue someone on the job who was of doubtful character or competence, or suspend the man and continue paying him for not working. In the case of *Clark v. Morris* (1968), 99 Ill. App. 2d 24, 31, [240 N.E.2d 515,] the court stated:

"* * * it would be incongruous to conclude that the Legislature would provide a form of discipline which would propel this Court into conferring that which many individuals might deem a happy boon and a favor, i.e., pay without work. The status of being 'without pay' is an incident of suspension."

Similarly, it would be incongruous in the instant case for a police officer under charges for taking advantage of his office to be paid while waiting to be officially discharged.

The statute provides for procedural protection against arbitrary action by the Superintendent in the form of a hearing and review by the police board; it does not mandate the payment of salary to one who is under charges with a recommendation of dismissal.

If the police board finds a dismissal is unwarranted, then an officer is entitled to back pay because he was wrongfully deprived of his right to work. But one whose dismissal is affirmed by the police board can have no such claim.' (17 Ill. App. 3d 346, 347-48, 308 N.E.2d 1, 2.)

In this cause we find no violation of the statute where plaintiff was suspended for more than 30 days and given full procedural hearing before his suspension was finally approved and he was discharged. See *People ex rel. Paczkowski v. Conlisk* (1976), 38 Ill. App. 3d 106, 347 N.E.2d 96."

■■ Among the cases which defendants cite is *Arnett v. Kennedy* (1974), 416 U.S. 134, 40 L. Ed. 2d 15, 94 S. Ct. 1633. In *Arnett*, the United States

Supreme Court found constitutional provisions of the Lloyd-LaFollette Act (5 U.S.C. §7501 (1966)), which authorize the suspension without pay of a nonprobationary employee pending an evidentiary hearing on charges seeking his discharge, as in the instant case. The Supreme Court reversed a lower court decision which had found the post-termination hearing procedures, similar to the Illinois Personnel Code here involved, constitutionally impermissible.[1] In his concurring opinion, Mr. Justice Powell articulated a public policy principle, similar to that stated in *Cotter* and approved by *Hoban*, relating to the substantial public interest in maintaining employee discipline and efficiency, stating (416 U.S. 134, 168, 40 L. Ed. 2d 15, 41, 94 S. Ct. 1633, 1651):

> "Prolonged retention of a disruptive or otherwise unsatisfactory employee can adversely affect discipline and morale in the work place, foster disharmony, and ultimately impair the efficiency of an office or agency. Moreover, a requirement of a prior evidentiary hearing would impose additional administrative costs, create delay, and deter warranted discharges. Thus, the Government's interest in being able to act expeditiously to remove an unsatisfactory employee is substantial."

We believe that the substantial public interest in effective and efficient government outweighs the temporary inconvenience to which a suspended employee is subjected when his salary is interrupted pending final disposition of charges leveled against him.

■■ Plaintiff argues that the approach taken in *Cotter* is in conflict with other Illinois authorities, but in none of the cases upon which he relies was the present issue before those courts for decision. (See *Powell v. Jones* (1973), 56 Ill. 2d 70, 305 N.E.2d 166; *Bromberg v. Whitler* (1977), 57 Ill. App. 3d 152, 372 N.E.2d 837; and *Pye v. Marco* (1973), 13 Ill. App. 3d 923, 301 N.E.2d 63.) In *Powell*, the supreme court delineated the rights of certified employees who were laid off for budgetary reasons as opposed to being discharged for disciplinary cause and noted that such employees are not entitled to remain at work and receive compensation until their petitions for hearing had been acted upon, finding that such employees had no right to remain working and receive their salaries pending the discharge proceedings. In *Bromberg*, the appellate court held that when an employer initiates a discharge by serving the employee with a notice of suspension pending discharge, his pay and benefits terminate on the

---

[1] In *Arnett*, the employee could request an opportunity to appear before the person having authority to make the decision to suspend and seek dismissal. In the present case, no such provision appears in the Personnel Code or the Department of Personnel Rules; however, the record shows that plaintiff was afforded hearings prior to his suspensions which cumulatively exceeded 30 days. Plaintiff does not claim that he sought, but was denied, a presuspension hearing for the period following November 7, 1977, which appears to have been available based upon the previous suspension proceedings.

effective date of his suspension, but that if the required hearing is not granted or the employee's discharge is held improper upon hearing, the employee is to be reinstated and entitled to back pay. In *Pye*, the court held that approval of charges alone does not constitute discharge, which may only be deemed effective after a hearing before the Civil Service Commission and a final decision rendered. There, a temporary injunction issued by the circuit court which enjoined State officials from removing that plaintiff from the payroll was reversed and the court remanded with directions to dismiss the complaint for want of equity. The language in the foregoing decisions bearing upon the present issue being dicta, the force of those cases as authority must yield to the express holding in *Cotter*, as followed by *Hoban* and supported by *Arnett v. Kennedy*.

Defendants assert that the explicit provisions for awarding back pay upon reinstatement in both sections 11 and 11b of the Personnel Code (Ill. Rev. Stat. 1977, ch. 127, pars. 63b111, 63b111b) refute plaintiff's asserted right to receive his salary pending discharge. We agree. Section 11b provides, in part:

> "Every employee reinstated for the period for which he was suspended or discharged shall receive full compensation for such period notwithstanding the fact that any person was employed to perform any duties of such employee during the time of such suspension or discharge. For purposes of this Section 11b, full compensation shall mean compensation such suspended or discharged employee *would have earned in the position classification during the period of suspension or discharge* less amounts earned by the employee from any other source and unemployment compensation payments received during such period." (Emphasis added.)

Recognizing that the foregoing language is in part attributable to the legislative intent of overcoming prior decisions restricting the right of judicially reinstated employees to receive compensation when their positions were occupied by *"de facto"* employees (see, *e.g., People ex rel. Durante v. Burdett* (1918), 283 Ill. 124, 118 N.E. 1009), we are nevertheless led to the conclusion that there would have been no need for requiring compensation to such suspended or discharged employee for what he "* * * would have earned in the position classification during the period of suspension or discharge, * * *" since he would have been compensated continuously throughout that period under plaintiff's thesis. Where two constructions of a statute are possible and the more literal interpretation would lead to antipodal results and the alternative would be more reasonable, the alternative reading is preferred. (*People ex rel. Cason v. Ring* (1968), 41 Ill. 2d 305, 242 N.E.2d 267; *Illinois National Bank v. Chegin* (1966), 35 Ill. 2d 375, 220 N.E.2d 226.) From the foregoing

statutory provisions, we perceive legislative intent and authority for separating from the work force an employee charged with misconduct or incompetence, with the understanding that he be granted full compensation and benefits that he would have earned during the suspension and discharge period should he be reinstated, and that such compensation and benefits shall accrue to him notwithstanding the possibility that another had been employed to take his place and was compensated with the allotted salary in the interim.

Plaintiff also seeks support for his argument in section 8b.15 of the Personnel Code (Ill. Rev. Stat. 1977, ch. 127, par. 63b108b.15). That section, however, simply delegates to the director of personnel the authority to promulgate rules for disciplinary suspension of less than 30 days. It does not preclude the imposition of suspensions for a longer period of time. Likewise, Department of Personnel Rules 2—640 and 2—770 upon which plaintiff also relies do not support his contention that the suspension here was without authority. Rule 2—640 is concerned exclusively with suspensions totalling less than 30 days in a 12-month period with the requirement of written notice stating the reason to be given to the employee. Rule 2—660, in fact, provides for suspending an employee for more than 30 days in any 12-month period when written charges showing good cause for such suspension are filed with the director. Rule 2—770 merely authorizes a 30-day suspension pending the decision of the operating agency as to whether or not charges for discharge shall be filed against said employee. As we have seen, Rule 2—660 and Rule 2—770 do not preclude a suspension of longer than 30 days when appropriate charges have been filed. Nor do we find in the legislative authority granting to the Civil Service Commission the right to impose for disciplinary purposes suspensions of up to 120 days under certain circumstances (Ill. Rev. Stat. 1977, ch. 127, par. 63b111) a limitation upon the director of personnel restricting suspension pending discharge to 30 days or less, as plaintiff contends. Had such exclusivity been intended by the legislature, it could easily have so stated.

Plaintiff next advances the argument that constitutional due process as currently delineated now requires that public employees be afforded a hearing before they can be suspended for more than 30 days. He notes that in *Thurston v. Dekle* (5th Cir. 1976), 531 F.2d 1264, a municipal ordinance providing for removal of employees upon charges being filed against them, subject to possible reinstatement through an appeal process, was voided on the grounds that under these circumstances removal amounted to discharge subject to a condition subsequent. In *Thurston*, however, the removal automatically became a discharge unless the employee successfully prosecuted an appeal. Under the Illinois Personnel Code, formal action and a full hearing on charges are required when the

employee seeks a hearing, not as an appeal, but as a *de novo* procedure. (Ill. Rev. Stat. 1977, ch. 127, par. 63b111.) In *Muscare v. Quinn* (7th Cir. 1975), 520 F.2d 1212, upon which plaintiff also relies, a suspension of less than 30 days under the Illinois Municipal Code was held to violate due process where it was summarily imposed without the employee being fully informed of the charges and the opportunity to challenge their sufficiency. In the present case, however, plaintiff was given formal notice of the charges occasioning his being kept from work, and a plenary hearing before the Civil Service Commission was held.

The *Muscare* court placed great reliance upon *Goss v. Lopez* (1975), 419 U.S. 565, 42 L. Ed. 2d 725, 95 S. Ct. 729, which we regard as readily distinguishable. In *Goss* it was held that prior hearings were necessary for suspension of public school students because of their recognized interest in attending school. In such a situation, however, it is impossible to remedy a wrongful suspension after the fact because it is impossible to turn back the calendar of instruction so that the wrongfully suspended student may obtain the same benefits as students who were not suspended. In contrast, section 11b of the Personnel Code (Ill. Rev. Stat. 1977, ch. 127, par. 63b111b), provides for retroactive compensation of wrongfully discharged or suspended employees, thereby fully remedying any harm they might be caused. Also distinguishable is *Goldberg v. Kelly* (1970), 397 U.S. 254, 25 L. Ed. 2d 287, 90 S. Ct. 1011, cited by plaintiff, which dealt with termination of welfare benefits. In that decision it was stressed that such a termination could have a drastic impact because welfare recipients were by their nature solely dependent on such benefits. Obviously, public employees are differently situated, having the possibility of finding alternative employment or relying upon other resources in response to termination of their compensation pending final disposition of the charges.

■■ From the foregoing authorities, we conclude that due process does not require a hearing prior to suspension, where, as here, an unrestricted hearing on the merits of the suspension and discharge with a full panoply of trial type safeguards is available as a matter of right; the potential length and likelihood of serious, uncompensable or permanent loss can be ameliorated or minimized; and the underlying procedures are subject to judicial review. (Ill. Rev. Stat. 1977, ch. 127, par. 63b111a.) The delay of 250 days alleged by plaintiff to have intervened between the filing of charges and the final determination of discharge by the Civil Service Commission is of considerable concern to us in this connection. Unfortunately, nothing in the record reveals the reasons for the delay or supports the inference that the State alone was responsible therefor. We are left to speculate as to whether one or more continuances were sought by either employee or employer, or procured by agreement, or caused by

matters beyond the control of either party, or required by the Civil Service Commission. The absence of explanation in the record for this inordinate delay is exacerbated by the circumstance of plaintiff's election to waive judicial review of his discharge, which obviated the procedural step of filing the transcript of hearings before the Civil Service Commission on administrative review. (Ill. Rev. Stat. 1977, ch. 110, pars. 272(a) and (b).) On this state of the record, therefore, we are unable to cite as a violation of due process the time span between the filing of charges and plaintiff's discharge.

We find inapposite plaintiff's references to New York law. There, the specific statutory provision authorizes the result plaintiff here seeks. N.Y. Civ. Serv. Law (Consol.) tit. B, §75 (1959).

For the foregoing reasons, the judgment of the circuit court of Cook County must be affirmed.

Affirmed.

DOWNING and PERLIN, JJ., concur.